255 So.2d 513 (1971)
Jerry Dwayne FOWLER, Appellant,
v.
STATE of Florida, Appellee.
No. 40302.
Supreme Court of Florida.
December 8, 1971.
Alex D. Finch, Clearwater, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
*514 PER CURIAM.
This is a direct appeal from a verdict and judgment convicting appellant Jerry Dwayne Fowler of the crime of murder in the first degree [Fla. Stat. § 782.04(1), F.S.A.] without a recommendation of mercy by the jury. Jurisdiction over the appeal attached under Fla. Const. Article V, § 4(2), F.S.A.
Initially, we are concerned with the contention of appellant that the Court below committed error in finding the defendant competent to stand trial. In this regard appellant is primarily concerned with the failure of the court to hold a formal sanity hearing as required by CrPR 1.210(a), 33 F.S.A. and former Fla. Stat. § 917.01, F.S.A.[1] prior to ruling on the issue of competency.
A study of the record reveals that defense counsel, by "Motion for Appointment of Expert Witnesses" dated December 30, 1969, requested, inter alia, a hearing under CrPR 1.210(a).
On February 6, 1970, the court responded to this motion by appointing Drs. Spoto and Frierson, recognized experts in the field of psychiatry, to examine defendant with a view to rendering opinions both as to defendant's sanity at the time the offense was committed, and as to his competency to stand trial. Both doctors submitted formal written reports concluding that defendant was a dangerous paranoid schizophrenic, that he probably did not know right from wrong at the time he committed the offense, and that he was not competent to stand trial.
At this juncture the State, contending that a serious issue with regard to defendant's sanity had been raised, moved for the appointment of a third expert, Dr. O'Brien. This motion was granted by the Court. It appears from the record that Dr. O'Brien in fact examined defendant two times, both times rendering the opinion that although defendant was a dangerous paranoid schizophrenic, he was nevertheless competent to stand trial. Dr. O'Brien also recommended that defendant undergo psychological testing under the supervision of Dr. Hicks. The recommended testing was administered pursuant to order of the Court, and Dr. Hicks submitted a formal evaluation of the results. Dr. Hicks did not state an opinion as to defendant's competency to stand trial.
On June 16, 1970, with the above-described reports before it, the Court entered an order in the presence of counsel for both sides finding defendant competent to stand trial. No formal hearing prior to entry of such order is disclosed by the record.
We conclude that the ruling of the trial judge that defendant was competent to stand trial was not an abuse of discretion in and of itself. The reports of the doctors were conflicting on this crucial point, and it was and is the function of the trial Court to resolve such factual disputes. Brock v. State, 69 So.2d 344 (Fla. 1954).
However, we must inquire whether the failure of the trial judge to hold a plenary hearing on the question of competency prior to ruling on the issue was an abuse of discretion sufficient to infect the whole of the pre-trial proceedings with regard to competency. In the circumstances, we think it was.
Criminal Rule 1.210(a), recites, in pertinent part:
"If before or during trial the court, of its own motion, or upon motion of counsel for the defendant, has reasonable ground to believe that the defendant is insane, the court shall immediately fix a time for a hearing to determine the defendant's mental condition." (Emphasis supplied)
In construing this rule, we attach prime significance to the words "shall" and "immediately". *515 The mandatory verb "shall" makes it obligatory on the court to fix a time for a hearing if there are reasonable grounds to believe that the defendant is insane. Brock v. State, supra. Moreover, the mandatory "shall" is followed by the word "immediately" which lends urgency and significance to the duty of the judge to conduct the required hearing. The framers of the rule (which tracks the language of former Fla. Stat. § 917.01, F.S.A.) obviously did not regard lightly the necessity for a hearing.
In the case sub judice, defense counsel moved for a hearing under the rule. Thereupon, the trial Court appointed two psychiatrists to examine defendant. Both concluded that he was insane both at the time the offense was committed and on the dates of the examinations. Both felt he was incapable of aiding or assisting counsel in the preparation of his defense. These two reports clearly constituted reasonable grounds to believe defendant insane, and should have alerted the trial judge to set a hearing date. His failure to do so was error. Accordingly, we are not confronted with the question of whether or not reasonable grounds to believe defendant insane existed at the time the motion for a hearing was made by defense counsel.
Our decision on this issue is not to be construed as making the hearing requirement non-waivable, even in situations where reasonable grounds to believe defendant insane exist. In the recent case of Brown v. State, 245 So.2d 68, 70 (Fla. 1971), involving a similar situation, this Court, speaking through Justice Adkins, stated:
"Defendant then requested further examination by experts. The Court, in entering an order finding the Defendant sane and capable of standing trial, recited that the reports of the experts previously appointed to examine the Defendant had been examined, and that the attorney for Defendant had announced that he had no testimony to offer and did not wish to cross-examine the experts who rendered the written reports. The Court in its order also found that no useful purpose could be served by any further examination."
We concur that where the parties and the judge agree, the trial Court may decide the issue of competency on the basis of the written reports alone. But where, as here, there are reasonable grounds to believe defendant insane, and defense counsel requests a hearing, it is error not to provide such a hearing.
However, our finding in this regard does not require vacation of the judgment and sentence entered against defendant at this time. Knight v. State, 164 So.2d 229 (Fla.App.3rd, 1964); United States v. Walker, 301 F.2d 211 (6 Cir.1962). Instead, the cause is temporarily remanded to the Circuit Court of Pinellas County with directions that the claim of insanity at the time of trial be determined in a full hearing as required by CrPR 1.210(a). If upon such hearing the trial Court determines that the defendant was sane at the time of trial, the Court is ordered to forthwith transmit the entire record of the case, including a transcript of the sanity hearing, and a copy of the trial judge's order finding defendant sane, back to this Court. At such time we will consider defendant's remaining points on appeal as raised by the briefs and argument previously submitted to the Court. We decline to adjudicate defendant's remaining contentions at this time because a finding of insanity at the time of trial would invalidate the entire trial proceeding and thereby render defendant's remaining arguments moot. Horace v. Culver, 111 So.2d 670 (Fla. 1959); Perkins v. Mayo, 92 So.2d 641 (Fla. 1957); and Deeb v. State, 118 Fla. 88, 158 So. 880 (1935).
If, however, the trial Court shall determine the defendant was insane at the time of trial but is now sane, the Court is directed to vacate the adjudication of guilt and sentence, to give the defendant an opportunity *516 to replead, and to set a new trial date; or if the holding of the trial Court shall be that the defendant was insane at the time of trial and is now or remains insane, the Court is directed to vacate the adjudication of guilt and sentence and commit the defendant to the proper institution. In either event, the trial Court is further directed to transmit the record on appeal back to this Court.
It is so ordered.
ERVIN, CARLTON, ADKINS and McCAIN, JJ., concur.
ROBERTS, C.J., and BOYD and DEKLE, JJ., dissent.
NOTES
[1] The latter statute was repealed by Chapter 70-339, Laws of Florida, effective January 2, 1971.